UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                :
ALLEN ALBERGOTTIE,                                              :
                                                                :        08 Civ. 8331 (SHS)
                                                                :
                                    Plaintiff,                  :
                                                                :        OPINION & ORDER
                  -against-                                      :
                                                                :
NEW YORK CITY; MARTIN HORN,                                     :
N.Y. City DOC. Commissioner; GLENN GOORD,                       :
N.Y. State, DOCS. Commissioner; ROBERT J.                      :
DERRISON, N.Y. State Div. of Parole,                           :
                                                                :
                                    Defendants.                 :
                                                                :
-----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

        *Pro se* plaintiff Allen Albergottie brings this action pursuant to 42 U.S.C. § 1983

challenging the imposition and enforcement of post-release supervision ("PRS") by the New

York State Department of Correctional Services (the "State DOCS"), by the New York State

Division of Parole, and by the New York City Department of Corrections (the "City DOC").

Specifically, Albergottie contends that the imposition of PRS by anyone other than a judge

violates the Due Process Clause of the Fourteenth Amendment by depriving defendants in

criminal proceedings of their constitutional right to be sentenced by a judge.  Further, Albergottie

alleges that his detention pursuant to a parole warrant was illegal and a violation of his Fourth

Amendment rights.  Defendants Glenn Goord, former Commissioner of State DOCS, and Robert

J. Derrison, former Chairman of the State Division of Parole (collectively the "State

Defendants"), have moved pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the complaint for lack

of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which

1

relief can be granted.  Defendants New York City and Martin Horn, Commissioner of New York

City Department of Corrections (collectively the "City Defendants"), have moved pursuant to

Fed. R. Civ. P. 12(c) for judgment on the pleadings.

Because this Court finds that (1) the State Defendants are entitled to qualified immunity

and (2) that Albergottie has failed to state a plausible claim for relief against the City

Defendants, the defendants' respective motions to dismiss the complaint are granted.

## I.    BACKGROUND

### A.    Factual Background

The following facts are taken from the complaint and are assumed to be true for the

purposes of this motion.  On November 11, 2001, Albergottie was arrested for burglary, assault,

and possession of burglar's tools.  (Compl. ¶ 1.)  Albergottie pled guilty and received a five-year

determinate sentence.  (Compl. ¶ 1.)  During his plea allocution and sentencing, the judge did not

inform Albergottie that a mandatory period of PRS would follow his determinate sentence.

(Compl. ¶ 1.)  Albergottie's commitment sheet also did not reflect the imposition of the

mandatory PRS.  (Ex. A to Compl.)[1]

Albergottie was conditionally released from incarceration and placed on PRS on

February 10, 2006.  (Pl.'s Mem. in Opposition to Motion to Dismiss I ¶ 27.)  Prior to his release,

Albergottie met with a parole counselor, and it is at this time that Albergottie alleges he first

learned of his mandatory period of PRS.  (Compl. ¶ 2.)  Although Albergottie objected to the

PRS, he was told that "if I didn't sign [the PRS] papers that I will not be allowed to go home on

my conditional release date."  (Id.)  Albergottie filed a grievance, which was "never answered,"

and for two years he reported to his parole officer.  (Id. ¶¶ 2-3.)

---

[1] Albergottie appends several documents to his complaint.  The "Sentence and Commitment" sheet will be referred
to as "Exhibit A," and the March 4, 2008 "State of New York – Board of Parole Preliminary Violation Hearing
Decision and Summary" will be referred as "Exhibit B."

Two years later, on February 14, 2008, Albergottie was arrested for forgery. (Compl. ¶ 3.) He posted bail, but was not released because a parole warrant had been lodged by the State Division of Parole. (Compl. ¶ 3; Ex. B to Compl.) Subsequently, Albergottie filed a petition for a writ of habeas corpus, which the New York Supreme Court, Bronx County, granted on May 2, 2008. (Compl. ¶¶ 3-4.) Although the parole warrant was vacated, Albergottie remained detained because the bail on his forgery charge was "raised from $3,500 to $10,000." (Id. ¶ 4.)

      B.    <u>Legal History</u>

In 1998, the New York legislature enacted "Jenna's Law," which requires the imposition of PRS "as a mandatory follow-up period to a determinate sentence for violent felony offenders." <u>State v. Myers</u>, 22 Misc. 3d 809, 812-13, 870 N.Y.S.2d 757 (Sup. Ct. Albany Cty 2008); <u>see also</u> N.Y. Penal § 70.45 (1999). For several years after the enactment, if the sentencing judge did not impose PRS at sentencing, the State DOCS imposed it administratively. See <u>Myers</u>, 22 Misc. 3d at 811, 812-13 (noting that the State DOCS estimated that it had administratively imposed PRS on over ten thousand defendants). New York appellate courts had also consistently upheld the administrative imposition of PRS in the absence of the imposition of PRS by the sentencing court. See <u>Collins v. State</u>, 69 A.D.3d 46, 50, 887 N.Y.S.2d 400 (4th Dep't 2009) (citations omitted).

Then, on June 9, 2006, the United States Court of Appeals for the Second Circuit held that the State DOCS' imposition of extra-judicial sentences of PRS violated federal law. <u>Earley v. Murray</u>, 451 F.3d 71, 76 (2d Cir. 2006). Following the Second Circuit's decision in <u>Earley</u>, three of the four appellate departments in New York continued to uphold the administrative imposition of PRS. <u>Myers</u>, 22 Misc. 3d at 813 n.9 (listing several cases from the first, third, and fourth appellate departments (citations omitted)).

In April 2008, the New York Court of Appeals decided <u>Garner v. N.Y. State Dep't Corr.</u>

<u>Servs.</u>, 10 N.Y.3d 358, 859 N.Y.S.2d 590 (2008) and <u>People v. Sparber</u>, 10 N.Y.3d 457, 859

N.Y.S.2d 582 (2008), which held that PRS imposed by anyone other than a judge violated New

York state law.  <u>See</u> <u>Garner</u>, 10 N.Y.3d at 362.  The New York state legislature subsequently

passed Corrections Law § 601-d to "provide a mechanism for courts to consider resentencing

defendants serving determinate sentences without court-ordered post-release supervision terms."

<u>People v. Williams</u>, 14 N.Y.3d 198, 206, 899 N.Y.S.2d 76 (2010).

      C.    <u>Procedural History</u>

In August of 2008, Albergottie filed this section 1983 complaint alleging that defendants

violated his constitutional rights when they administratively imposed and enforced a five-year

term of PRS on him.  (Compl. ¶¶ 1-5.)  He seeks compensatory and punitive damages for the two

years he served on supervised release.  (<u>Id.</u> ¶ 5.)

## II.    STANDARD OF REVIEW

      A.    <u>Rule 12(b)(1) Standard</u>

On a motion to dismiss a complaint for lack of subject matter jurisdiction, "'the party

invoking federal jurisdiction bears the burden of establishing that jurisdiction exists.'" <u>Sharkey v.</u>

<u>Quarantillo</u>, 541 F.3d 75, 82 (2d Cir. 2008) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S.

555, 561 (1992)).  While the court must accept as true all material facts alleged in the complaint,

in resolving challenges to subject matter jurisdiction, the court may look beyond the pleadings in

order to satisfy itself that it has the authority to hear the action.  <u>See</u> <u>Filetech S.A. v. Fr. Telecom</u>

<u>S.A.</u>, 157 F.3d 922, 932 (2d Cir. 1998) (quotation and citation omitted).

B.      Rule 12(b)(6) and 12(c) Standards

For purposes of a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) or a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), a court assumes the truth of all facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  See Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 154 (2d Cir. 2006); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).  To survive either motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  For a claim to be plausible, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.  Thus, if a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible [its] complaint must be dismissed."  Id.

When considering a Rule 12(b)(6) or 12(c) motion to dismiss against a *pro se* plaintiff—such as Albergottie—this Court may consider as true facts taken not just from plaintiff's complaint and the accompanying exhibits but also plaintiff's opposition memoranda.  Baskerville v. Blot, 224 F. Supp. 2d 723, 728 (S.D.N.Y. 2002); see also Thompson v. Carter, 284 F.3d 411, 419 (2d Cir. 2002).  Moreover, a *pro se* plaintiff's complaint must be liberally construed to raise the strongest claims that the allegations suggest.  Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); Phillip v. Univ. of Rochester, 316 F.3d 291, 293-94 (2d Cir. 2003); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  "However, a *pro se* party's bald assertions of a constitutional violation without any factual predicate cannot survive even the most liberal standard accorded a Rule 12(b)(6) motion."  Baskerville, 224 F. Supp. 2d at 728 (citations omitted).

III.    **ANALYSIS**

A.      <u>The Motions to Dismiss</u>

The State Defendants assert a broad array of arguments to dismiss the complaint as to

them.  Because the State Defendants filed a motion to dismiss pursuant to Rule 12(b)(1)

challenging this Court's jurisdiction, the Court will consider the jurisdictional issue first.  The

Court will then assess the State Defendants' argument that Albergottie's claim is barred by the

statute of limitations.  The Court will finally turn to the State Defendants' assertion of qualified

immunity.  Because the Supreme Court has "'repeatedly . . . stressed the importance of resolving

immunity questions at the earliest possible stage in litigation,'" <u>Pearson v. Callahan</u>, 129 S. Ct.

808, 815 (2009) (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)), and because the State

Defendants are correct that they are entitled to qualified immunity from being sued based on

plaintiff's claims, the Court need not assess the remaining arguments raised in support of the

Rule 12(b)(6) motion to dismiss.[2]

1.      *Eleventh Amendment*

Albergottie asserts claims for damages against Goord, the former Commissioner of State

DOCS, and Derrison, the former Chairman of the State Division of Parole, in their individual

capacities.[3]  The State Defendants argue that the Eleventh Amendment bars these claims because

Albergottie is seeking damages for the operation of Penal Law § 70.45, which makes PRS

mandartory for certain defendants, and this makes the state the real party in interest.  (State

Defs.' Mem. in Support of Motion to Dismiss at 22-23.)

---

[2] Although the State Defendants have attached documents to their Rule 12(b)(6) motion to dismiss, the Court is not considering them because the qualified immunity defense can be analyzed "based on facts appearing on the face of the complaint." <u>McKenna v. Wright</u>, 386 F.3d 432, 436 (2d Cir. 2004).

[3] Although Albergottie seeks damages against Derrison in his official capacity, <u>see</u> Pl.'s Opp. I ¶ 13, the Eleventh Amendment bars suits for damages alleged against a state official in his official capacity, <u>see</u> <u>Berman Enters., Inc. v. Jorling</u>, 3 F.3d 602, 606 (2d Cir. 1993) (citing <u>Hafer v. Melo</u>, 502 U.S. 21 (1991)).  Therefore, Albergottie's claims for damages alleged against Derrison in his official capacity are dismissed.

The Court disagrees.  Albergottie is not arguing that Penal Law § 70.45 itself violates constitutional rights; rather, Albergottie argues that the enforcement by the State Defendants was in violation of his constitutional rights.  (Compl. ¶¶ 1-5).  The Eleventh Amendment does not bar claims alleged against a state official in his individual capacity even though the official is acting in accord with state law.  See Hafer, 502 U.S. at 28-29 (holding that the immunity available to state officials for individual capacity suits for retrospective damages is qualified immunity); Berman Enters., 3 F.3d at 606 (stating that even though the state will reimburse state officials, the payment "does not make the state the real party in interest").

Therefore, the Rule 12(b)(1) motion to dismiss the claims against both State Defendants Derrison and Goord in their individual capacities is denied. [4]

### 2.    *Statute of Limitations*

As a threshold matter, the State Defendants argue that Albergottie's claim accrued in 2002 and is barred by the applicable three year statute of limitations.  (State Defs.' Supp. at 3.) Because there is no federal statute of limitations for actions arising under section 1983, federal courts apply the statute of limitations period for personal injury actions in the forum state, which in New York is three years.  Ormisten v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997).  However, the date of accrual is governed by federal law.  Id.

The State Defendants contend that Albergottie's claim accrued in 2002 because Albergottie either knew or had reason to know that PRS had been imposed administratively when the State DOCS received him into custody in September 2002.  However, courts in this circuit have uniformly held that pursuant to Heck v. Humphrey the claims of plaintiffs such as

---

[4] In his complaint Albergottie only seeks money damages, but in his extensive opposition papers, Albergottie seeks "injunctive" and "declaratory" relief.  (Pl.'s Opp. I ¶¶ 5, 15).  This Court declines to construe Albergottie's opposition papers as an amended complaint, and also notes that either relief appears unnecessary because Albergottie's PRS was vacated.  See People v. Albergottie, Index No. 6805-01 (Sup. Ct. N.Y. Cty Aug. 4, 2008).

Albergottie do not accrue until the underlying sentence is invalidated, or, in this case, until Albergottie's petition for writ of habeas corpus was granted.  See, e.g., Ruffins v. Dep't of Corr. Servs., 701 F. Supp. 2d 385, 393-97 ("plaintiff's § 1983 cause of action did not accrue until September 17, 2008, when the state court re-sentenced him without any PRS term"); Santiago v. Fischer, No. 09-CV-1383, 2009 WL 3852001, at *3 (E.D.N.Y. Nov. 18, 2009) (plaintiff's section 1983 claim did not accrue until his habeas petition was granted); Scott v. Fischer, No. 07 Civ. 11303, 2009 WL 928195, at *4 (S.D.N.Y. Mar. 30, 2009) (same), affirmed by 616 F.3d 100 (2d Cir. 2010); cf. Heck v. Humphrey, 512 U.S. 477, 489-90 (1994) (section 1983 claim for damages which questions the validity of a conviction or sentence does not "accrue until the conviction or sentence has been invalidated").  Because plaintiffs such as Albergottie were under no obligation to "bring a habeas petition to vacate [their] PRS" when they were admitted into DOCS custody, Scott, 2009 WL 928195, at *4, the accrual date of Albergottie's claim is not in 2002 but rather in 2008 when his habeas petition was granted, (Compl. ¶¶ 3-4).

Albergottie filed this complaint in 2008, less than three years after his habeas petition was granted, and, therefore, his claim is not time barred.

### 3.    Qualified Immunity

The doctrine of qualified immunity protects governmental officials "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson, 129 S. Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine whether a right is "clearly established," courts in this Circuit assess whether: "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was

unlawful." Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (internal quotations and citations omitted).  Qualified immunity applies regardless of whether an official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law or fact." Pearson, 129 S. Ct. at 815.  Moreover, whether the law was clearly established must be evaluated at the time of the conduct at issue.  See Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003).

The State Defendants contend that they are entitled to qualified immunity for their imposition and enforcement of Albergottie's PRS because the administrative imposition of extra-judicial PRS did not violate clearly established constitutional rights pre- or post-Earley.  In June 2006, the Second Circuit held that the administrative imposition of PRS by the State DOCS, when not imposed by a judge, violated the constitutional rights of criminal defendants.  See Earley, 451 F.3d at 76.  The Second Circuit has subsequently held that the imposition and enforcement of extra-judicial PRS by the State Defendants pre-Earley did not violate a clearly established constitutional right.  See  Scott v. Fischer, 616 F.3d 100, 107 (2d Cir. 2010) ("[W]e conclude that it was not clearly established for qualified immunity purposes prior to Earley that the administrative imposition of PRS violates the Due Process Clause.").  Therefore the State Defendants are entitled to qualified immunity for the imposition and enforcement of extra-judicial PRS during the pre-Earley period.

This Court has also previously held that post-Earley, but prior to the New York State Court of Appeals decision in Garner and Sparber in April 2008, state officials are entitled to qualified immunity.  See Hardy v. Fischer, No. 08 Civ. 2460, 2010 WL 4359229, at *2-3 (S.D.N.Y. Nov. 3, 2010).  Because there was "considerable confusion in the New York State courts as to the applicability of the Second Circuit's decision," a reasonable state official would

9

not realize that the continued enforcement of extra-judicial PRS would violate a constitutional right.  Id.  Therefore the State Defendants are entitled to qualified immunity for the post-Earley but pre-Sparber/Garner enforcement of extra-judicial PRS.

Although PRS had already been imposed on Albergottie when he was released in February 2006, the State Defendants continued to enforce Albergottie's conditions of PRS after the New York Court of Appeals decided Sparber and Garner in April 2008.  Albergottie was detained by the City pursuant to the parole warrant until May 2008 when the Supreme Court, Bronx County, granted Albergottie's habeas petition and vacated the warrant.  (Compl. ¶¶ 3-4; Pl.'s Opp. I at ¶ 10.)  Thus, this Court must determine whether a reasonable state official would have known that the continued enforcement of the already imposed extra-judicial PRS violated a clearly established constitutional right after Sparber and Garner.

The Court finds that the defendants are entitled to qualified immunity because until June 30, 2008, a reasonable State DOCS or parole official would not realize that he had a duty or authority to seek the correction of a procedurally deficient but otherwise valid and statutorily required period of PRS.  Even though the New York Court of Appeals had declared the administrative imposition of extra-judicial PRS in violation of New York State law, the Sparber court stated that this was "only a procedural error, akin to a misstatement or clerical error, which the sentencing court could easily remedy."  Sparber, 10 N.Y.3d at 466.  It was only when the New York state legislature passed Correction Law § 601-d, on June 30, 2008, that the State Defendants were under any duty to "notify sentencing courts that PRS had not been properly imposed in certain cases . . . and to have these defendants returned to the original sentencing courts for modification of their sentences."  Williams, 14 N.Y.3d at 208; see also Scott, 616 F.3d at 108 n.5 (stating that it was not until the passage of Corrections Law § 601-d that an

"affirmative duty" was imposed upon government officials to seek resentencing); cf. Penal §

70.45.

Because there was no duty to affirmatively revoke, alter enforcement, or seek the

correction of extra-judicial PRS sentences, a reasonable state official would not realize that the

continued enforcement of a the statutorily required period of PRS was in violation of clearly

established constitutional rights.  This Court finds that the State Defendants are entitled to

qualified immunity for the period between April 2008 and June 30, 2008.[5]

Therefore, all claims against the State Defendants are dismissed.[6]

    B.    <u>Motion for Judgment on the Pleadings</u>

        *1.*    *Heck v. Humphrey Favorable Termination Rule*

Albergottie seeks damages for the detention, from February until May 2008, by the City

DOC based on an "illegal parole warrant."  (Pl.'s Mem. in Opposition to Motion to Dismiss II ¶¶

9.)  The City Defendants argue that <u>Heck v. Humphrey</u> bars Albergottie's section 1983 action for

damages because they claim that this period of detention was credited toward Albergottie's

sentence for a separate forgery offense and that sentence has not been invalidated.

<u>Heck v. Humphrey</u> states that a section 1983 claim for damages which questions the

validity of an conviction or a sentence does not arise until the conviction or sentence has been

"reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

---

[5] In his first memoranda in opposition, Albergottie included Brian Fischer, the Commissioner of State DOCS appointed on January 1, 2007, as if he were a defendant.  (Pl.'s Opp. I ¶ 11.)  He is not; if he were, he would similarly be entitled to qualified immunity.

[6] Albergottie has another basis for his request for damages based on the unconstitutional imposition of PRS because the trial court also failed to advise Albergottie of the mandatory PRS in his plea colloquy.  (Pl.'s Opp. I ¶ 25.)  In 2005, the New York Court of Appeals found that a trial court's failure to discuss the mandatory period of PRS was a violation of a defendant's procedural due process rights, <u>People v. Catu</u>, 4 N.Y.3d 242, 244-45, 792 N.Y.S.2d 887, 825 N.E.2d 1081 (2005), but the court found that this breach of the trial court's constitutional duty requires the trial court to vacate the plea, <u>id.</u>  A reasonable State DOCS or parole official would not understand that the continued enforcement of an otherwise valid period of PRS was in violation of a releasee's constitutional rights because the trial court had violated the releasee's procedural due process rights during a plea colloquy held in 2002, some three years prior to the decision in <u>Catu</u>.  Therefore, the State Defendants would be entitled for qualified immunity.

authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. 477-78.  However, before instituting his suit for damages flowing from the detention pursuant to the parole warrant, Albergottie filed a petition for a writ of habeas corpus, that petition was granted, and the parole warrant was vacated. (Compl. ¶ 3-4; Pl.'s Opp. I ¶¶ 10, 31.)  For the purposes of Heck v. Humphrey, Albergottie has shown that his detention was invalid and his section 1983 claim for damages related to the detention is cognizable.  At most, the jail time credit limits any damages available to Albergottie, but it does not raise a bar to Albergottie's claim.

### 2.    *False Arrest, False Imprisonment, and Malicious Prosecution Claims*

The City Defendants argue that Albergottie cannot sustain his false arrest, false imprisonment, or malicious prosecution claims arising from his detention in 2008 pursuant to a parole warrant because that detention is privileged.  To establish a false arrest or imprisonment claim under either New York State law or section 1983, a plaintiff must show that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of his confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Santiago, 2009 WL 3852001, at *7 (citing Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) ("The elements of a claim for false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law." (quoting Hygh v. Jacobs, 961 F.3d 359, 366 (2d Cir. 1992)))).  Only the fourth element—whether the confinement was privileged—is at issue here, and the Court agrees that the confinement was privileged.

If the confinement is made pursuant to an arrest warrant that is "valid on its face," Santiago, 2009 WL 3852001, at *7, and supported by probable cause, then the confinement is privileged and a plaintiff's false arrest or imprisonment claim is foreclosed, Weyant v. Okst, 101

12

F.3d 845, 852 (2d Cir. 1996); Broughton v. State of New York, 37 N.Y.2d 451, 457-58, 373

N.Y.S.2d 87, 335 N.E.2d 310 (1975).

Albergottie was confined on the basis of a parole warrant, and in New York the issuance

of parole warrants are supported by "reasonable cause:"

> If a parole officer having charge of a . . . person released to post-release
> supervision . . . shall have reasonable cause to believe that such a person lapsed
> into criminal ways or company, or has violated one or more conditions of . . .
> post-release supervision . . . a warrant may be issued for the retaking of such
> person for his temporary detention . . . .

N.Y. Exec. § 259-i(3)(a)(i).  A parole warrant supported by reasonable cause is sufficient to

privilege the arrest and confinement even if the parole warrant is later declared invalid.  See

Hardy, 701 F. Supp. 2d at 612-613 (finding that compliance with N.Y. Exec. § 259-i(3)(A)(i) is

sufficient to privilege the arrest and imprisonment "even if the PRS was wrongly-imposed");

Santiago, 2009 WL 3852001, at *7 ("Furthermore, [a]n arrest based on a facially valid warrant,

which results in an unlawful detention, does not give rise to an action for false arrest even though

the warrant was erroneously or improperly issued." (quotation and citation omitted)); cf. Alvardo

v. City of New York, 482 F. Supp. 2d 332, 337 n.2 (S.D.N.Y. 2007).

There are no allegations that the parole warrant was facially invalid or non-compliant

with N.Y. Exec. § 259-i(3)(A)(i).  In fact, Albergottie was originally detained at the City DOC

because of his arrest for forgery.  (Compl. ¶ 3.)  The arrest for forgery is more than sufficient to

establish reasonable cause for a parole warrant, and without any allegations that the warrant was

facially invalid or lacking in reasonable cause, Albergottie's detention on the parole warrant is

privileged and he fails to state a plausible claim for false arrest or imprisonment.

For similar reasons, Albergottie's claim for malicious prosecution also fails.  To establish

a claim for malicious prosecution, a plaintiff must show: "(i) the commencement or continuation

of a criminal proceeding by the defendant against the plaintiff; (ii) the termination of the proceeding favor of the plaintiff; (iii) the absence of probable cause for the criminal proceeding; and (iv) actual malice." <u>Knowles v. Johnson</u>, No. 08 Civ. 4741, 2010 WL 1050973, at * 4 (E.D.N.Y, Mar. 23, 2010) (citing <u>Rothstein v. Carriere</u>, 373 F.3d 275, 292-94 (2d Cir. 2004)). Although Albergottie has shown that the proceeding against him for the parole violation was terminated in his favor when his petition for writ of habeas corpus was granted, (Compl. ¶ 4; Pl.'s Opp. I ¶ 10), he has alleged no facts to dispute a finding of reasonable cause or to dispute the finding of probable cause by the parole board in Albergottie's preliminary hearing, (Ex. B to Compl.).  Because Albergottie bears the burden to prove that the prosecution was not supported by probable cause, he fails to state a claim for malicious prosecution.  See <u>Broughton</u>, 37 N.Y.2d at 457-49 (finding that the plaintiff bears the burden to show want of probable cause to support a malicious prosecution claim).

Therefore, Albergottie's claims for false arrest, false imprisonment, and malicious prosecution are dismissed.

### 3.   *Personal Involvement*

To state a claim pursuant to section 1983, a plaintiff must allege (1) that the challenged conduct taken by a person acting under color of state law and (2) that that conduct deprived the plaintiff of a right secured by the Constitution or federal law.  See <u>Velez v. Levy</u>, 401 F.3d 75, 84 (2d Cir. 2005); <u>see also</u> <u>Santiago</u>, 2009 WL 3852001 at *7.  Because section 1983 "imposes liability for 'conduct which subjects, or causes to be subjected' the complainant to a deprivation of rights secured by the constitution and laws," <u>Williams v. Smith</u>, 781 F.2d 319, 323 (2d Cir. 1985) (quoting <u>Rizzo v. Goode</u>, 423 U.S. 362, 370-71 (1976) (additional quotations and citations omitted)), the "'personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award for damages under § 1983,'" Schomo v. City of New York, 579 F.3d 176, 184 (2d Cir. 2009) (quoting Colon v. Coughlin, 58 F.3d 863, 873 (2d Cir. 1995)).

Although the personal involvement of a defendant is a question of fact, see Williams, 781 F.2d at 323, Albergottie has failed to allege any facts regarding the involvement of City Defendant Horn in the imposition or enforcement of PRS from September 2002, when Albergottie was received into state custody, (Compl. ¶ 2), until February of 2008, when city officials detained him pursuant to the state parole warrant, (Compl. ¶ 5).  Therefore, any claim based on the alleged unconstitutional imposition or enforcement of PRS from September 2002 to February 2008 is dismissed as to City Defendant Horn for lack of personal involvement.

Albergottie also asserts a claim of supervisory liability against Horn because he is the policymaker "who trains, supervises, and implements policy, practice, and custom to the employees," and that such polices, practices, and training included the execution of parole warrants at the "behest of the New York State Division of Parole" without investigation to determine the validity of parole warrants.  (Pl.'s Mem. in Opposition to Motion to Dismiss II ¶¶ 4, 7.)  However, Albergottie fails to establish supervisory liability because the City Defendants' conduct was privileged.  If the detention of Albergottie pursuant to a facially valid parole warrant is privileged, and Albergottie alleges no other facts to support a claim of supervisory liability, then Albergottie fails to allege a plausible claim for failure to properly supervise and prevent constitutional violations.

Therefore, any claim alleged against Horn for supervisory liability is dismissed.

### 4.    Claims Against New York City

Albergottie has asserted claims against New York City on the grounds that the city "repeatedly failed to make any meaningful investigation" into the parole violation charges

15

against him, and failed to train city employees how to execute parole warrants.  (Pl.'s Opp. II ¶ 6.)  To sustain a claim for relief pursuant to section 1983 against a municipal defendant, a plaintiff must show (1) the existence of an officially adopted policy or custom and (2) a causal connection between the custom or policy and the deprivation of a constitutional right.  See Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); City of Canton v. Harris, 489 U.S. 378, 388-89 (1989); Walker v. City of New York, 974 F.2d 293, 301 (2d Cir. 1992).  Because Albergottie does not provide any allegations or facts that New York City's policy, custom, or inadequate training caused, or was the moving force behind, the alleged constitutional violations, the City's motion is granted.

Even under the most liberal interpretation, the complaint does not assert plausible allegations that any officially adopted policy, custom, or inadequate training caused constitutional violations.  The only allegations against New York City relate to the detention of Albergottie at a city jail pursuant to a parole warrant, (Pl.'s Opp. I ¶ 29; Pl's Opp. II ¶ 1), which is privileged, see supra Part III.B.2.

Because the detention is privileged, and there are no further allegations that New York City policies caused constitutional violations, the Court grants the City Defendants motion to dismiss plaintiff's Monell claim against New York City.

C.      State Claims

To the extent plaintiff attempts to assert any remaining state law claims, the Court declines to exercise supplemental jurisdiction over them.  See 28 U.S.C. § 1367(c)(3).

**III.    CONCLUSION**

The Court dismisses all claims against the defendants because the State Defendants are entitled to qualified immunity, the actions of the City Defendants are privileged, and Albergottie otherwise fails to state a plausible claim for relief.  Accordingly, the complaint is dismissed.

Dated: New York, New York
         February 15, 2010

SO ORDERED:

Sidney H. Stein, U.S.D.J.

17